(†) PARKER *versus* GODDARD.

N. let certain lands and buildings to F. for six years, and also gave him a permit to detach some of the buildings and erect others, and that he might take such new erections away or sell them upon the premises, at the determination of the lease, after the buildings had been restored to their original position, and not before. The change was made and a new building erected. After such erection and before the expiration of the lease, it was surrendered and accepted. After such surrender the lessee sold the new building to plaintiff, who, at a place distant from the premises and before the six years had expired, notified the lessor that he wished to take off the building, and was ready to comply with all the conditions of the permit. The lessor claimed the building as his own, and said he should hold it by force if there was any attempt to remove it. In an action of trover for the value of the building; it was *held*: —

1st. That for the purpose of complying with the conditions of his permit, no demand on the part of the lessee was necessary, and his rights could not be changed or enlarged by making a demand.

2d. That the obligations of the parties under the permit were not mutual and dependent, but to fulfil the conditions to entitle him to the building, all that was to be done, was on the part of the lessee.

3d. That if the lessee was rightfully on the premises at the proper time, and in the act of performing or attempting to perform his stipulations mentioned in the permit, and had then been refused that privilege, or resisted, it might have been evidence of conversion.

But 4th. The claim to the building, under the circumstances and nature of the demand, was no evidence of conversion. The lessee was bound to restore the buildings to their original position before he could take any away.

On Report from *Nisi Prius*, Howard, J., presiding.

Trover, for a building.

After the evidence was introduced it was agreed to submit the cause to the determination of the full Court on the facts proved and admissible. A nonsuit or default to be entered as the legal rights of the parties might require.

The facts are all stated in the opinion.

*Fessenden & Butler*, for plaintiff.

*Shepley & Dana*, for defendant.

Tenney, J. — On Nov. 30, 1850, John Neal gave to Alexander Foss a written lease of Cape Cottage, and the land on which it stood, and which was connected therewith, for the term of six years from April 1st, 1851. On Sept. 22, 1852, the lessor gave to the lessee a permit in writing to erect a certain building upon the land, and to make certain changes in the house, and additions at his own charge and upon certain conditions. "Upon a strict compliance with said conditions, the said Foss to be allowed to remove and set back the present addition to the main building, and put in its place an addition of about eighty by thirty feet, to be finished for drawing rooms, parlors and sleeping rooms, at his own charge; and to take away or sell upon the ground, said building so erected at his own expense, at the determination of said lease, after said restoration has been made, and not before." On Nov. 18, 1852, this lease and permit were assigned by the lessee to Alexander Foss & Co.

Under the permit, Foss & Co. erected the buildings in controversy. The main building was eighty feet in length, and thirty feet in width, and was connected with the stone building, which formed the main part of Cape Cottage; a kitchen was connected with the stone building by a wooden addition, which was merely a covered passage way. They moved back the kitchen, and butted the new building against the said passage way, not connected with it or morticed to it, but built so as to be removed without injury to the other buildings, and with that view. The old kitchen was moved

back of the new building, but was not connected with it. A removal of the new building, and a restoration of every thing as it was before the erection, would have been attended with no difficulty. It was only necessary for this purpose to haul off the new building and restore the kitchen to its place.

On August 25, 1853, Neal conveyed certain lands, in and about Cape Cottage, to the defendant, subject to the right of the occupants at that time, to remove one building on a strict compliance with the conditions to be found in his permit, which was assigned to the defendant in the deed of the conveyance of the land.

On Oct. 25, 1853, Alexander Foss, and Alexander Foss & Co., in consideration of having forfeited the lease, and all rights acquired by it, of every description on or about the premises, by the nonpayment of rent, taxes, &c., and for other valuable consideration, gave up all their interest in or about the premises to the defendant, the owner thereof at that time.

On May 18, 1853, Alexander Foss & Co. gave a bill of sale to T. I. Tinkham and others, of the addition to the house, called Cape Cottage, erected by the former, and standing between the L part and the main body of the house, &c. And on Oct. 20, 1853, (but stated erroneously in the instrument to be Sept. 20, 1853,) these owners gave a bill of sale of the same property to the plaintiff.

On Dec. 5, 1853, M. M. Butler, as the agent of the plaintiff, demanded the buildings of the defendant, in Portland, several miles therefrom, telling him that he understood the lease had been given up, and he had taken possession of the premises; and that the plaintiff was the owner of the buildings and wished to take them off, and was ready to comply with all the conditions contained in the permit given by Neal to Foss. The defendant replied that the buildings were his, and that he should resist all attempts to remove them, and said in substance, that he should hold them by force, if an attempt to remove them should be made.

At the time the agent for the plaintiff made the demand of the buildings, the plaintiff had all the right to them which the original lessee of Neal would have had under the lease and permit, if the same had not been assigned, and the defendant stood in the place of a lessor. The plaintiff treated the lease as having terminated on Oct. 25, 1853, when those claiming under it surrendered their interest therein to the defendant. It is not denied by him that he accepted this surrender, and when told by the agent of the plaintiff, that he understood that the lease had been given up, and that he had taken possession of the premises, he made no answer inconsistent with these statements.

If the plaintiff had the right to take off the buildings upon a strict compliance with the conditions of the permit, when the demand of them was made, and it was his object to make the demand merely for the purpose of setting the main building erected under the permit, back, and leaving it on the ground of the defendant, in order to restore the original buildings to their former condition, the demand was entirely unnecessary. Under the permit he had the full power to remove the buildings, or to sell them upon the ground, by a compliance with the conditions. And this power could not be increased by a demand. Without such compliance, he could not legally remove or sell the building. After the determination of the lease, either by a surrender before its expiration, by its terms, or by the full completion of the term, the plaintiff had no right to the use of the buildings, so long as they stood upon the defendant's land, further than was necessary for the restoration of the original buildings.

The obligations of the parties under the permit, were not mutual and dependent, and requiring something to be done by each at the same time; in which case the one wishing to carry out the contract, or to do an act to entitle him to an action for its breach, must either show the act done, or if not done, at least that he has performed every thing that was in his power, and which he was bound to do.

Nothing was required by the permit to be done by the lessor for a complete execution of the contract, but all was to be performed by the lessee. He was to fulfil the conditions, and upon the performance, the right had been given in the permit to remove the buildings. For this purpose he was entitled to every reasonable opportunity. It was not in the power of the other party legally to throw in his way any obstacles to the accomplishment of those things necessary to be done, to give him the rights secured by the permit. These rights could not be taken away or diminished by the lessor, or the defendant who represented him, without some consent or neglect of the lessee, or some one who stood in his place, as to the buildings in question.

If the plaintiff had gone on to the ground at the proper time, neither too early nor too late, which is a matter that we find no occasion to decide, and was doing no more than was suitable to restore the original buildings, and the defendant had prevented him from performing these authorized acts, and had declared that he should not under any circumstances remove the building from the precise spot on which it was, and so was prevented from making the restoration, the defendant might have been liable for a conversion of the buildings. But it is proper to examine the evidence to ascertain whether this was the case.

Laying out of the case all questions whether the plaintiff had lost any right to remove the buildings, erected by those holding under the lease, after the surrender of the remainder of the term to defendant on October 25, 1853, and before December 5, 1853, when the demand was made; and also, whether any right to the buildings on a strict compliance with the conditions of the permit, till the determination of the lease by its own terms, accrued to the plaintiff, we are to ascertain whether the occurrences on December 5, 1853, between the plaintiff's agent and the defendant, amount to a conversion by the latter.

We understand from the proof, as the plaintiff's counsel appear in their argument to have done, that the demand

was not merely, that the main building should be allowed to be so far removed from those originally erected, which had been displaced and altered, that the latter could be restored to their former condition, but of the buildings to be taken away from the defendant's land, as the property of the plaintiff, upon the notice given by his agent, that he was ready to perform the conditions contained in the permit, as soon as it could be done after the main building should be removed. The intention of the defendant in his reply to the demand and the accompanying statement, must be gathered not only from the reply to plaintiff, but from the language used by the plaintiff's agent, and all the attending circumstances. The refusal of the defendant was the answer to the demand as it must have been understood at the time. The plaintiff having no right to remove the building as absolutely his own, the defendant might with propriety deny the right assumed in the demand, and object to the removal. The buildings being on his land and he being in possession, he might, as they were then situated, assert that they were his, and that he should effectually resist all attempts to remove them. All this was predicated upon the contract in the permit, that the lessee could " take away or sell upon the premises said building so erected, at the determination of the lease, *after said restoration had been made, and not before.*"

It is insisted on the part of the plaintiff, that " the restoration of every thing to its former condition, from the nature of the case, could not be performed until after the buildings were removed." If the lessee entered into a contract with the lessor, that in consideration that the buildings to be erected by him could be taken away, he was *first* to do acts, as a condition precedent, which were impossible. It cannot be admitted, therefore, that he would take away the building without any consideration first to be rendered. This would allow the removal and oblige the other party to abandon his security for the fulfilment of the condition, and trust to his promise that he would perform the stipu-

lated acts, and compel him to resort to the remedy of an action, upon the breach of that promise. But such a question does not arise upon the facts of the case. From the testimony introduced by the plaintiff there was no difficulty in removing the new building, and in restoring every thing as it was before its erection. If this building could be taken from the defendant's grounds entirely, nothing is presented in evidence which would prevent the plaintiff from taking it away, so far only as to enable him to restore the kitchen, and perform the other work about the original buildings required by the condition, and still leaving it in the defendant's possession for his security.

The plaintiff omitted to do those acts which he was bound to perform before he could take away or sell the building in controversy, and the demand and refusal constituted no evidence of a conversion by the defendant.

*Plaintiff nonsuit.*

